IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DELGADO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUAN G. DELGADO, APPELLANT.

Filed March 17, 2026.    No. A-25-604.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Layf J. Carlson, of Burnett Legal Group, L.L.P., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, BISHOP, and FREEMAN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Juan G. Delgado appeals from an order of the district court for Douglas County denying his request to transfer his case to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

## BACKGROUND

On June 25, 2024, the State filed an information charging Delgado with first degree assault, a Class II felony; discharging a firearm at an occupied motor vehicle, a Class ID felony; and use of a firearm to commit a felony, a Class IC felony. The events that gave rise to these charges occurred on May 12, 2024. On that date, Delgado was 16 years old; he was born in February 2008.

Delgado filed a motion to transfer the matter from district court to juvenile court on August 19, 2024, the same date he was arraigned on the four charges, and the district court's order noted:

- 1 -

"[Delgado] waived his right to have a hearing to transfer this matter to Juvenile Court within fifteen (15) days as it may take some time for his expert to be prepared. [Delgado]will advise this Court when he is ready to proceed with the hearing to transfer this matter to Juvenile Court." A juvenile transfer hearing was eventually held in February and April 2025. At the hearing, the State called three witnesses to testify.

The State's first witness was a detective with the Omaha Police Department. His testimony set forth the events that occurred on May 12, 2014, that led to Delgado's arrest. Delgado was a prominent member of the Mafia Locos gang, which was founded by his older brother. Delgado and two other Mafia Locos members went to a Cinco de Mayo event, planning to have an encounter with the 2800 gang. Members from both gangs had an altercation involving guns two days earlier and had been exchanging messages on social media about going to the Cinco de Mayo event on May 12 to continue their fight.

On May 12, 2024, members of both gangs arrived at a Walgreens Pharmacy parking lot, located near the Cinco de Mayo event. At first both gangs stood staring at each other, each waiting for the other to approach. Delgado then began to jog toward the 2800 gang members and fired one gunshot, hitting a member of the 2800 gang in the leg. A member of the 2800 gang returned fire, and both gangs ran in opposite directions.

A few minutes later, members of both gangs met up again in a nearby alleyway. Delgado fired another gunshot toward the 2800 gang members, striking a vehicle. Both gangs dispersed and left the area. Both shootings occurred in a business district in south Omaha, near the entrance to the Cinco de Mayo event. The area was crowded and congested with pedestrians due to the event.

After Delgado and the two other Mafia Locos members fled, they hid the gun Delgado had fired in a dumpster at an elementary school. Police officers subsequently apprehended Delgado and the two other Mafia Locos gang members and located the firearm in the dumpster.

The second witness for the State was Amber Harding, a juvenile probation officer. She provided evidence regarding Delgado's history with the juvenile court system. Harding became Delgado's probation officer for the first time in March 2023 when she was supervising low-risk to moderate-risk juveniles, and a second time in September 2024, when she was supervising high-risk juveniles and Delgado was reassigned to her caseload based on the pending charges. In March 2023, Delgado was placed on probation for 6 months for a disturbing the peace charge. Prior to being put on probation, he was given a chance at a diversion program, but he was unsuccessful and placed on probation for 6 months. Harding testified Delgado did "okay" on probation "for a little while," but then issues arose with substance use, including marijuana and alcohol, noncompliance with school, and concerns about what he was doing in his free time.

In September 2023, a violation of probation was filed because Delgado was charged with third degree assault, was suspended from school, tested positive for marijuana, and failed to engage in a pre-social activity. He was subsequently placed on probation for 6 months for the third degree assault charge.

Harding testified that services were implemented to help Delgado get "back on the right track," but he was noncompliant with the services. The services included electronic monitoring and multisystemic therapy (MST), which is therapy that occurs in the home with the juvenile and parent and addresses how to deal with conflicts that arise. Delgado did not keep his monitor charged so his location could not be tracked and he inconsistently engaged in MST sessions.

Delgado's family had moved to Blair, Nebraska, and Delgado was leaving home without permission, often going to Omaha, even though he had been instructed by probation to stay out of the Omaha area. He was listed as a runaway more than three times. A probation violation was filed in December 2023, due to the above behavior. In April 2024, his probation was extended indefinitely.

A month later, the events that led to the current charges took place. Delgado was placed at the Douglas County Youth Center Detention Facility. At the time of the motion to transfer hearing, he had been involved in three incidents at the facility involving assaultive behavior.

Harding was asked if there were services that could be offered to Delgado that could rehabilitate him. She stated that MST was the highest level of service that can be implemented in the community and he was successfully discharged from the service in March 2024 by a different probation officer. She stated that MST could be repeated if getting the service back in the home was available.

Rich Crall, the intake coordinator for Douglas County juvenile probation, also testified for the State. Crall explained the services that juvenile probation offers. He stated juvenile probation typically starts with in-home services for the juvenile if the juvenile can be in the community without being a safety risk. The juvenile could have a family support worker, a multisystemic therapist in the household to deal with the family, a community youth coach, and/or a therapist. If the juvenile is ordered to be placed outside the home, he or she could go to a group home or to a psychological or psychiatric treatment facility. Crall stated that the highest level of out-of-home placement is the Youth Rehabilitative Treatment Center (YRTC) in Kearney, Nebraska; it is a secured detention facility. He also testified that when the juvenile court orders a particular out-of-home placement, the facility gets to decide whether to accept the juvenile. The only exception is placement at the YRTC.

Crall testified that in a case like the present case, where the juvenile is a self-admitted gang member with a "shooting history," the placement options would be very limited. He also stated that juvenile probation terminates when the juvenile turns 19 years old, regardless of whether he or she needs additional time on probation or additional services.

On cross-examination, Crall agreed that 2 years is typically enough time to rehabilitate a juvenile if the juvenile can be rehabilitated.

Delgado called Dr. Colleen Conoley, a psychologist, to testify at the hearing. Conoley performed a psychological evaluation of Delgado and prepared a report following the evaluation for the purpose of the motion to transfer hearing. Her report included her recommendations on Delgado's rehabilitation should the case be transferred to juvenile court. The recommendations included that a guardian ad litem be appointed to advocate for continuity of services. She believed therapeutic foster care placement would be most beneficial to Delgado as it would include a greater level of direct supervision and adult involvement than a group home. Conoley also believed that fostering Delgado's interest in becoming a handyman would allow him to replace the sense of achievement he received from criminal activity with something that was prosocial and beneficial to society.

Conoley opined that Delgado is highly amenable to treatment. She testified that in her opinion, transferring Delgado's case to juvenile court would be in his best interests. She believed the public could be kept safe because the data predicted Delgado had a low risk of committing

future violence. She also believed he appreciated the seriousness of his charges. Conoley also testified that the average time a juvenile is in a therapeutic foster care program is 6 to 8 months and change is typically sustained in that amount of time. Therefore, it was her opinion that the time left before Delgado turned 19 years old was sufficient time to rehabilitate him.

On August 7, 2025, the district court entered an order overruling Delgado's motion to transfer his case to juvenile court. This appeal followed.

ASSIGNMENT OF ERROR

Delgado assigns that the district court erred in denying his motion to transfer the case to juvenile court.

STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

*Legal Framework.*

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all the allegations against Delgado put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2024).

In the instant case, when Delgado moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2024):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this

purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a). The burden of proving a sound basis for retention lies with the State. See *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023).

In order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *Id.* It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.*

When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *Id.*

*No Abuse of Discretion.*

As a preliminary matter, we note that Delgado's brief was not filed in this appeal until December 18, 2025, notwithstanding the expedited requirements established in Neb. Rev. Stat. § 43-274(5) (Reissue 2016). The State's brief was timely filed on January 20, and we elected to decide this matter without scheduling oral argument as allowed by Neb. Ct. R. App. P. § 2-111(B)(1)(a).

In its order denying Delgado's motion to transfer, the district court set out and stated that it considered the required statutory factors set forth in § 43-276. Specifically, it mentioned the violence used in the incident, possession and use of a firearm, being in a gang, public safety, and prior lack of compliance in juvenile court and failure to take advantage of the assistance provided by the juvenile court. The court also stated that it had great concern for public safety and the ability of the juvenile court to provide any meaningful benefit to Delgado in the time it would have control over him.

Delgado assigns that the district court abused its discretion in overruling his motion to transfer. He argues that three factors in particular support transferring his case to juvenile court: the type of treatment he would most likely be amenable to, his best interests, and the safety of the public. See § 43-276(1). In support of his argument, he relies on Conoley's testimony that he was highly amenable to treatment and there was enough time before his 19th birthday for his successful rehabilitation. He suggests, therefore, that society's interest in preserving the safety of the public is reasonably assured if his case is transferred to juvenile court.

Delgado is essentially asking this court to reweigh the factors and reach the opposite conclusion of the district court. However, in reviewing a trial court's ruling on a transfer motion, an appellate court's function is not to review the record de novo to determine whether it thinks the case should be transferred. See *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025). Instead, an appellate court's review is limited to determining whether the trial court's reasons and rulings are clearly untenable. See *id.* To be "untenable" is to be "incapable of being defended." *Id.* (quoting Webster's Encyclopedic Unabridged Dictionary of the English Language 1567 (1989)). If an appellate court substitutes its judgment regarding the weight of the evidence, it fails to apply an abuse of discretion standard of review. See *State v. Jeremiah T., supra.*

Applying the abuse of discretion standard of review to the present case, we cannot say the district court's ruling is clearly untenable or "incapable of being defended." The evidence supports the district court's conclusion. Delgado was a prominent member of the Mafia Locos gang, which was founded by his older brother. During the incident at issue, he was in possession of a firearm and shot at members of another gang twice, the first time hitting an individual in the leg and the second time hitting a vehicle. Both shootings occurred near a Cinco de Mayo event where there were many pedestrians in the area.

Delgado was 16 years old at the time of the alleged offenses and had a history with the juvenile court. He had been given an opportunity to participate in a diversion program after he was charged with disturbing the peace, but he was unsuccessful and placed on probation. While on probation, he was charged with third degree assault. He has failed to comply with the terms of his probation and at the time of the alleged offenses he was on probation indefinitely.

Although Conoley opined that Delgado was highly amenable to treatment and there was enough time before his 19th birthday for his successful rehabilitation, the district court, as the trier of fact, is not required to take the opinions of experts as binding upon it. *State v. Jeremiah T., supra.* Testimony of expert witnesses is not treated any differently in the factfinding process than that of witnesses generally when it comes to determining weight and credibility of the testimony. *Id.*

Neither the district court's factual findings nor its ultimate refusal to transfer the matter to the juvenile court was clearly untenable. The district court articulated a sound basis for retaining jurisdiction. Accordingly, we conclude the district court did not abuse its discretion in overruling Delgado's motion to transfer to juvenile court.

## CONCLUSION

For the reasons stated in this opinion, we conclude that the district court did not abuse its discretion in denying Delgado's motion to transfer the case to juvenile court. The district court's order is affirmed.

AFFIRMED.